849 A.2d 1074 (2004)
369 N.J. Super. 481
ASBURY PARK BOARD OF EDUCATION, Keansburg Board of Education, Passaic Board of Education, Phillipsburg Board of Education, and Trenton Board of Education, Petitioners-Appellants,
v.
NEW JERSEY DEPARTMENT OF EDUCATION, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued January 13, 2004.
Decided January 26, 2004.
*1075 Richard E. Shapiro, Princeton, argued the cause for appellants.
Michelle Lyn Miller, Senior Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General, attorney; Nancy Kaplen, Assistant Attorney General, of counsel; Ms. Miller, on the brief).
David G. Sciarra, argued the cause for amicus curiae Education Law Center.
Before Judges SKILLMAN, COBURN and WELLS.
The opinion of the court was delivered by SKILLMAN, P.J.A.D.
This appeal involves the validity of regulations adopted by the Commissioner of Education that govern the determination of the amount of additional supplemental State aid to be disbursed to Abbott school districts in 2003-04. Appellants' primary contention is that those regulations conflict in various respects with an order that the Supreme Court issued on July 23, 2003. We conclude that the regulations dealing with the determination of preliminary maintenance budget figures conflict with the Court's order. Consequently, we direct the Department of Education (DOE) to redetermine those figures within ten days. We reject appellants' other challenges to the validity of the regulations.
On March 24, 2003, the DOE filed a motion in the Supreme Court to modify the mandates of Abbott v. Burke, 153 N.J. 480, 710 A.2d 450 (1998) (Abbott V), which included a request for approval of the Commissioner's proposal that "the 2003-2004 school year will be a maintenance year in which all effective and efficient K-12 programs provided in the 2002-2003 school year will be continued." The Education Law Center (ELC) opposed the DOE's motion and filed a cross-motion which sought various relief with respect to the directives of Abbott V. A number of Abbott districts (Asbury Park, Elizabeth, Passaic, Pemberton and Trenton) sought to intervene in opposition to the DOE's motion.
In response to the motion, the Supreme Court ordered the DOE and ELC to participate in mediation before Judge Carchman. The Court denied the Abbott districts' motion to intervene but allowed them to participate in the mediation as amicus curiae. The mediation before Judge Carchman resulted in agreement on all issues except for the DOE's application to treat 2003-04 as a maintenance *1076 year in which the relaxation of remedies for the 2002-03 school year that the Court granted in Abbott v. Burke, 172 N.J. 294, 297-98, 798 A.2d 602, 604-05 (2002) (Abbott IX) would be extended for an additional year.
On May 20, 2003, the Court entered an order in accordance with the mediation agreement which required the DOE to provide the Abbott districts with budget decisions by May 30, 2003, and established a schedule for the disposition of any appeals from those decisions. In conformity with this order, the DOE issued decisions on May 30, 2003, regarding the Abbott districts' budgets. Twenty-two districts appealed these decisions, and the Commissioner referred the matters to the Office of Administrative Law (OAL) as contested cases.
On June 24, 2003, the Supreme Court issued an order which approved the mediation agreement between the DOE and ELC and set July 10, 2003, as the date for oral argument on the unresolved issue of whether the DOE should be granted an additional one-year extension of the relaxation of remedies the Court had previously granted for the 2002-03 school year. Abbott v. Burke, 177 N.J. 578, 832 A.2d 891 (2003).
After hearing oral argument, the Court entered an order on July 23, 2003, which granted the DOE's application to extend the relaxation of remedies granted in Abbott IX to the 2003-04 school year. Abbott v. Burke, 177 N.J. 596, 832 A.2d 906 (2003). Paragraph one of this order states:
The DOE shall have the authority to treat the 2003-2004 school fiscal year as a maintenance year for purposes of calculating Additional Abbott Burke State Aid for the Abbott districts. During 2003-2004, K-12 programs provided for in the 2002-2003 school year will be continued, subject to conditions set forth in this Order.
[Id. at 598, 832 A.2d at 907.]
Paragraphs two through seven of the order contain various provisions relating to implementation of the authorization for the DOE to treat 2003-04 as a maintenance year, which are discussed in detail later in this opinion. The order also required the DOE to issue its preliminary maintenance budget figures within thirty days and required the OAL to issue initial decisions on any appeals from those figures within an additional thirty day period. Id. at 598-99, 832 A.2d at 907-08. Under the Court's May 20, 2003 order, the Commissioner was required to issue final decisions on those appeals within twenty-five days of the OAL decisions. This order also provided that any appeal to this court from a final decision of the Commissioner in a preliminary maintenance budget appeal had to be filed within five days of his decision and directed this court to expedite consideration of any such appeal.
On August 22, 2003, the Commissioner adopted emergency regulations, which were effective immediately, amending previously adopted regulations that govern the DOE's determination of Abbott district additional supplemental funding for the 2003-04 school year. N.J.A.C. 6A:10-1.1 to -4.7.
On August 27, 2003, the DOE issued preliminary maintenance budget figures to the Abbott districts. Twenty-two Abbott districts challenged these budget determinations within the framework of their previously filed budget appeals which the Commissioner had transmitted to the OAL. The Abbott districts attempted in their appeals before the OAL to challenge the validity of the part of the emergency regulations which define "maintenance budget."
On October 6, 2003, five Abbott districts filed this appeal challenging the validity of parts of the emergency regulations the Commissioner adopted on August 22, 2003.
*1077 In September and early October, the OAL issued initial decisions in the Abbott budget appeals, which were prepared by twenty different Administrative Law Judges (ALJs). The ALJs' initial decisions all concluded that this court had exclusive jurisdiction over appellants' claim that the definition of "maintenance budget" in the emergency regulations adopted by the Commissioner is invalid. The decisions then ruled upon appellants' other arguments relating to the preliminary maintenance budget figures.
On October 20 and 28, the Commissioner issued final decisions in the Abbott districts' appeals from the preliminary maintenance budget figures. These final decisions adopted the part of the ALJ's initial decisions which concluded that this court has exclusive jurisdiction to review the validity of the DOE regulations including the definition of "maintenance budget."
Twenty-one districts filed notices of appeal to this court from those decisions, one of which was subsequently withdrawn. On October 31, 2003, this court issued a case management order that consolidated the twenty budget appeals with the present appeal challenging the validity of the DOE regulations for case management purposes only and established a schedule for briefing and oral argument.
Preliminarily, we question whether appellants followed the proper procedural course in challenging the validity of the DOE's emergency regulations relating to the determination of preliminary maintenance budgets. Appellants claim that the regulations are invalid because they conflict with the Supreme Court's July 23, 2003 order. A claim that a party, here the DOE, is acting in violation of court order ordinarily should be brought before the court that issued that order, here the Supreme Court, by a motion for relief in aid of litigants' rights under Rule 1:10-3. Moreover, if there is a question concerning the meaning of an order, a party may file a motion for clarification with the court that issued the order. Although appellants were only allowed to participate as amicus curiae in the proceedings resulting in entry of the July 23rd order, the Court no doubt assumed that appellants' interests would be adequately protected by that role. If appellants believed that their lack of party status deprived them of the right to seek enforcement of the Court's order, they could have renewed their motion to intervene at the same time they sought relief under Rule 1:10-3.
Alternatively, if appellants did not believe they could obtain relief under Rule 1:10-3, they could have filed a notice of appeal with this court challenging the validity of the DOE regulations immediately after they were adopted. Appellants also could have moved for an emergent stay of application of those regulations in the DOE's determination of the preliminary budget maintenance figures. See R. 2:9-7. In addition, appellants could have moved for direct certification of the appeal by the Supreme Court under Rule 2:12-1 or Rule 2:12-2 on the theory that the Court is best equipped to pass on a question as to the interpretation or enforcement of one of its own orders.
We also note that appellants' failure to seek prompt judicial relief has resulted in an unfortunate delay in the determination of the validity of the DOE regulations. Those regulations were adopted and became effective on August 22, 2003. The DOE issued preliminary budget estimates based on those regulations on August 27, 2003. At that point, appellants could have moved before the Court not only for a summary declaration that the DOE regulations were invalid because they conflicted with the Court's July 23rd order but also a summary reversal of the DOE preliminary *1078 maintenance budget figures on the ground that they were based on invalid regulations. If such a motion had been successful, the DOE would have been required to issue new preliminary maintenance budget figures and the scope of the budget appeals before the OAL would have been limited to whatever issues those new figures may have generated.
Instead of promptly challenging the DOE regulations, appellants elected to pursue their budget appeals before the OAL, presenting their argument that the definition of "maintenance budget" in the DOE regulation conflicts with the Court's July 23rd order as one of the issues in those proceedings. The ALJs and the Commissioner properly held that this challenge to the validity of an administrative regulation is within the exclusive jurisdiction of this court and the Supreme Court. See R. 2:2-3(a)(2); Pascucci v. Vagott, 71 N.J. 40, 51-53, 362 A.2d 566, 572-74 (1976).
Appellants did not seek any form of judicial relief relating to the validity of the DOE regulations until October 6, 2003, when they filed notice of this appeal challenging the regulations. Moreover, appellants did not seek expedited consideration of this appeal until late October. As a result, the Abbott districts' budget appeals were conducted before the OAL and the Commissioner on the premise that the DOE regulations are valid, and appellants and the other Abbott districts have now filed twenty appeals to this court that raise a series of complex issues concerning the interpretation and application of the DOE regulations that appellants contend conflict with the Court's July 23rd order.
In determining whether the regulations are invalid because they conflict with the order, we are mindful of our limited role as an intermediate appellate court called upon to interpret a Supreme Court order. It is not within our province to decide whether the DOE's methodology for determining the Abbott districts' 2003-04 budgets, which is based primarily on their actual expenditures in 2002-03, would provide a more accurate measure than the districts' 2002-03 budget figures of what it will cost to provide the same programs and services in 2003-04. Our sole responsibility is to determine whether the DOE regulations conform to the Court's order.
To discharge this responsibility, we had the parties submit for our review the briefs and other papers that were submitted to the Supreme Court in connection with the proceedings resulting in entry of the July 23rd order. We also obtained a tape of the July 10th oral argument, which each member of the panel has listened to.

I
Appellants' first argument is that the definition of "maintenance budget" in the DOE emergency regulations conflicts with the definition of that term in the Court's July 23, 2003 order.
This argument has two sub-parts. First, appellants contend that because the July 23rd order contains a definition of maintenance budget and does not expressly authorize the DOE to adopt a regulation defining that term, the DOE did not have authority to adopt a regulation dealing with this subject. Second, appellants contend that the DOE's definition of maintenance budget conflicts with the definition in the July 23rd order.
The first sub-part of appellants' argument requires only brief discussion. The 2004 Annual Appropriations Act confers express authority upon the Commissioner to adopt regulations relating to the determination of the State aid to be distributed to Abbott school districts:
The Commissioner of Education shall not authorize the disbursement of funds *1079 to any "Abbott district" until the commissioner is satisfied that all educational expenditures in the district will be spent effectively and efficiently in order to enable those students to achieve the core curriculum content standards. The commissioner shall be authorized to take any necessary action to fulfill this responsibility, including but not limited to, the adoption of regulations related to the receipt and/or expenditure of State aid by the "Abbott districts" and the programs, services and positions supported thereby. Notwithstanding any provision of P.L.1968, c. 410 (C. 52:14B-1 et seq.), any such regulations adopted by the commissioner shall be deemed adopted immediately upon filing with the Office of Administrative Law.
Moreover, we have previously recognized the appropriateness of the DOE exercising its statutorily-delegated rule-making authority to notify Abbott districts and other affected parties of the standards and procedures the DOE will employ in determining the State aid those districts are entitled to receive. In re 1999-2000 Abbott v. Burke Implementing Regulations, 348 N.J.Super. 382, 395-97, 792 A.2d 412, 419-21 (App.Div.2002). Nothing in the Court's July 23rd order precludes the DOE from exercising this rule-making authority with respect to the determination of the amount of additional supplemental State aid required for a "maintenance budget" in an Abbott district. The DOE's regulations must of course conform to the Court's order, just as any administrative regulation interpreting or implementing a statute must conform to the enabling legislation under which it is adopted, but the fact that the Court's order contains a definition of "maintenance budget" and other detailed provisions relating to the determination of the State aid to be distributed to Abbott districts in 2003-04 does not foreclose the DOE from also addressing this subject by regulation. Indeed, it is not uncommon for state agencies to adopt regulations that simply parrot requirements set forth in statutes or case law. Moreover, to the extent the July 23rd order may require interpretation, it is preferable for the DOE to notify Abbott districts of its interpretation of the order by regulation rather than simply to issue budget figures without any explanation of how those figures were determined. Therefore, the only real question is whether the DOE's definition of "maintenance budget" conflicts with the Court's July 23rd order.
The DOE's definition of "maintenance budget" is contained in N.J.A.C. 6A:10-1.2, which states in relevant part:
"Maintenance budget" means, for the 2003-2004 school year, a budget funded at a level such that the district can implement 2002-2003 approved and provided programs, services, and positions and includes documented increases in non-discretionary expenditures and adjustments for actual 2002-2003 expenditures. Examples of non-discretionary expenditures are increases in contracted salaries, health benefits, and special education tuition. Maintenance does not include the restoration of programs, positions, or services that were provided in previous years or new programs, positions, or services unless necessary to meet paragraph 2c of the Supreme Court's order of June 24, 2003 in Abbott v. Burke. Maintenance also does not include non-recurring 2002-2003 expenditures.
This definition of "maintenance budget" is incorporated in the regulation dealing with the determination of preliminary maintenance budget figures, which states:
The Department shall issue a preliminary estimate of supplemental funding needed to support a maintenance budget as reduced for ineffective and/or inefficient non-instructional programs for *1080 2003-2004. This amount is subject to adjustment as provided in the Appropriation Act.
[N.J.A.C. 6A:10-3.1(e).]
The records in the twenty Abbott budget appeals pending before this panel indicate that the DOE construes these regulations to allow preliminary maintenance budget figures to be determined on the basis of the Abbott districts' actual expenditures in the 2002-03 school year rather than their 2002-03 approved budgets.
The DOE contends that the definition of "maintenance budget" contained in N.J.A.C. 6A:10-1.2 and the methodology that it used to determine the Abbott districts' preliminary maintenance budgets are authorized by paragraph two of the Court's July 23rd order, which states:
The Statewide aggregate amount of Additional Abbott Burke State Aid shall be presumptively calculated as the total amount of Additional Abbott Burke State Aid approved for the Abbott districts for Fiscal Year 2002-2003, subject to adjustment as required for a maintenance budget. A maintenance budget shall mean that a district will be funded at a level such that the district can implement current approved programs, services, and positions and therefore includes documented increases in non-discretionary expenditures. Examples of non-discretionary expenditures are increases in contracted salaries, health benefits, and special education tuition. Maintenance does not include the restoration of programs, positions, or services that were reduced in 2002-2003, or new programs, positions, or services, except in respect of Paragraph 2c. of the Court's Order of June 24, 2003 (pertaining to those elementary schools without a whole school reform developer in place in 2002-2003 and permitting whole school reform contracts in certain circumstances), irrespective of the timing for the promulgation of regulations governing that provision.
[177 N.J. at 598, 832 A.2d at 907]
The DOE argues that this paragraph, which requires Abbott districts to be "funded at a level such that the district can implement current approved programs, services and positions[,]" reflects the Court's adoption of "the DOE proposal of `program maintenance' rather than `funding maintenance.'"
However, we conclude that the validity of the DOE's definition of "maintenance budget," as applied to the determination of preliminary maintenance budgets, does not turn on the interpretation of paragraph two, because paragraph four of the July 23rd order specifically delineates the methodology that the DOE must follow in determining the Abbott districts preliminary maintenance budgets. Paragraph four contains the following directive:
Within 30 days of the issuance of this Order, the DOE shall provide in a Notice to each district preliminary maintenance budget figures for the 2003-2004 school year consisting of the 2002-2003 approved budget and an estimate of the supplemental funding that will be needed to support that currently approved budget. If the DOE deletes an expenditure from a district's 2002-2003 budget related to the district's non-instructional programs and based on the effective and efficient standard, the DOE must include in the written notice to the district the expenditure deleted along with a specific statement explaining why the program or part thereof is no longer effective and efficient.
[177 N.J. at 598-99, 832 A.2d at 907-08 (emphasis added).]
This paragraph clearly directs the DOE to determine preliminary maintenance budget figures on the basis of the Abbott districts' "2002-03 approved budget[s]" *1081 plus an estimate of the supplemental funding needed to support "that currently approved budget" (emphasis added), less deductions for any non-instructional programs or parts of programs that the DOE finds to be ineffective and inefficient. The DOE's definition of "maintenance budget," which requires supplemental State aid only for those programs, services and positions that were not simply "approved" in the Abbott districts' 2002-03 budgets but also actually "provided" during the 2002-03 school year, and DOE's methodology for determining preliminary maintenance budget figures, which is based on the Abbott districts' actual 2002-03 expenditures rather than their 2002-03 approved budgets, cannot be reconciled with the Court's unequivocal directive to the DOE to determine preliminary maintenance budget figures on the basis of the Abbott districts' "2002-03 approved budget[s]."
Although paragraph four of the July 23rd order is clear on its face without resort to any extrinsic evidence of the Court's intent, the tape of the July 10th oral argument leaves no doubt that the Court meant precisely what it said. During the course of the argument, the Court repeatedly expressed concern that the case was being heard in mid-July and that the Abbott districts still had not received notification from the DOE of the amount of supplemental State aid they would be receiving for the 2003-04 school year. Counsel for the ELC expressed this concern in even stronger terms and, in addition to opposing the DOE's motion to be allowed to treat 2003-04 as a maintenance year, proposed a methodology for the DOE's determination of preliminary maintenance budget figures:
[W]hat standard do you apply now especially given we are in the middle of all of this and we got to complete it quickly?... This court should direct the department to immediately give each district the preliminary budget amount as approved in the May 30th decision. They have given a decision. It has no number in it. Give the districts that number, which is the 02-03 approved budget, not actually spent, but approved. Give that number and an estimate of the supplemental funding that would be needed to support that budgetthat at least would give the districts the department's determination, if you will, of what constitutes maintenance.
[Audio tape: Abbott v. Burke oral argument, held by Supreme Court of New Jersey (Jul. 10, 2003) (on file with Court) (emphasis added).]
The first sentence of paragraph four of the July 23rd order mirrors this proposal by the ELC for the determination of preliminary maintenance budget figures. Thus, although the Court granted the DOE's motion to be allowed to treat the 2003-04 school year as a maintenance year for the Abbott districts, it adopted the ELC's proposal for determining preliminary maintenance budget figures.
Therefore, we conclude that N.J.A.C. 6A:10-3.1(e) and the definition of "maintenance budget" in N.J.A.C. 6A:10-1.2 are invalid as applied to the determination of the Abbott districts' preliminary maintenance budget figures. Accordingly, we direct the DOE to redetermine the Abbott districts' preliminary maintenance budget figures in conformity with paragraph four of the July 23rd order and to issue revised figures to the Abbott districts within ten days of the filing of this opinion. Those figures will be subject to further modification based on this court's decisions in the twenty pending Abbott budget appeals, which will be issued at a later date. In redetermining the preliminary maintenance budget figures, the DOE may for now assume the correctness of the Commissioner's ineffective and inefficient findings *1082 and other conclusions that are not affected by the declaration of invalidity of the DOE's definition of maintenance budget. We express no view concerning the validity of the DOE's definition of "maintenance budget" as it may be applied in any context other than the determination of preliminary maintenance budget figures.

II
Appellants' second argument is that the definition of "non-instructional program" in the DOE regulations conflicts with the Court's July 23rd order.
The second sentence of paragraph four of the order authorizes the DOE to "delete[ ] an expenditure from a district's 2002-03 budget ... based on the effective and efficient standard," but limits this authorization to "the districts' non-instructional programs." 177 N.J. at 599, 832 A.2d at 908. In addition, paragraph three directs "the DOE [to] promulgate an emergency regulation establishing the standard for evaluating the effectiveness and efficiency of the districts' non-instructional programs." Id. at 598, 832 A.2d at 908. Paragraph three also states: "Noninstructional programs are defined as office/administrative expenditures and programs, positions, services and/or expenditures that are not school based or directly serving students." Ibid.
As directed, the DOE adopted emergency regulations on August 22nd which include provisions dealing with the determination of the effectiveness and efficiency of non-instructional programs in Abbott districts. The regulations define "non-instructional program": `"Non-instructional program' means, for the 2003-2004 school year, office/administrative expenditures and programs, positions, services and/or expenditures that are not school based or that are not directly serving students in the attainment of the core curriculum content standards." N.J.A.C. 6A:10-1.2.
Appellants argue that the DOE's definition of "non-instructional program" conflicts with the July 23rd order because it adds to the Court's definition a requirement that to be immune from effectiveness and efficiency review, a program, position, service and/or expenditure must be directly serving students "in the attainment of the core curriculum content standards."
Based on our review of the twenty pending Abbott budget appeals, there does not appear to be any finding by the Commissioner of ineffectiveness and inefficiency that would be affected by the difference in the definitions of "non-instructional program" in the July 23rd order and the DOE regulation. The Court's definition of "non-instructional" includes not only "office/administrative expenditures" but also "programs, positions, services and/or expenditures that are not school based or [that are not] directly serving students." 177 N.J. at 598, 832 A.2d at 907-08. Thus, under this definition, a program, position or service which is "school based" but is not "directly serving students," is "non-instructional." The only "school based" programs, position or services that the Commissioner found to be ineffective and inefficient were custodial, food service and vice principal positions, none of which involve direct service to students. Consequently, these positions constitute "noninstructional" positions under the Court's definition. Because the Court's order and the DOE regulations both apply only to the determination of the additional supplemental aid to be distributed to Abbott districts in the 2003-04 school year, and the DOE has completed its effectiveness and efficiency reviews of the Abbott districts' 2003-04 budgets, there is no need to decide any hypothetical question as to whether there could be a program, position, service or expenditure that would be classified as "non-instructional" under the DOE's definition, but would be exempt *1083 from effectiveness and efficiency review under the Court's definition.

III
Appellants also challenge the validity of the DOE regulation which prescribes standards for evaluating the effectiveness and efficiency of non-instructional programs. The Court's July 23rd order does not itself include standards for the DOE's effectiveness and efficiency reviews of the Abbott districts' 2003-04 budgets. Instead, the Court directed the DOE to establish such standards by an emergency regulation. 177 N.J. at 598, 832 A.2d at 907-08. Consequently, appellants do not contend that the DOE's regulation establishing standards for effectiveness and efficiency reviews conflict with any explicit provision of the July 23rd order. Accordingly, our review of this DOE regulation is governed by the usual standard for judicial review of administrative agency regulationswhether the regulation violates the general policies of the Abbott decisions or is "arbitrary, capricious or unreasonable[.]" In re 1999-2000 Abbott v. Burke Implementing Regulations, supra, 348 N.J.Super. at 396, 792 A.2d at 420.
The DOE regulation establishing standards for the evaluation of effectiveness and efficiency states:
The effectiveness and efficiency of non-instructional expenditures in the 2002-2003 budget shall be determined by:
i. A comparative analysis of noninstructional expenditures to those of other school districts and/or historical spending patterns in the district.
ii. An analysis of staffing needs including but not limited to comparative data of ratios of non-instructional/ administrative staff to instructional staff as well as district-specific information regarding staffing needs.
iii. A review of non-instructional programs to identify expenditures that are included that may be funded through other funding sources or that alternative funding is not available because the expenditure is not essential to the provision of a thorough and efficient education. Such expenditures include, but are not limited to, capital costs that could be funded pursuant to the Education Facilities Construction and Financing Act or that exceed the facilities efficiencies standards established pursuant to that Act.
iv. Cost savings and/or inefficiencies identified or proposed by the district or by the State Auditor or Office of Legislative Services audit.
[N.J.A.C. 6A:10-3.1(c)(1).]
Appellants do not challenge the validity of subsections (iii) and (iv) of this regulation. Their challenge is limited to the parts of subsection (i) and (ii) which authorize the DOE to conduct a comparative analysis of an Abbott district's non-instructional expenditures relative to those of other school districts as well as comparative data of ratios of non-instructional/administrative staff to instructional staff.
Appellants contend that consideration of such comparative data to determine the effectiveness and efficiency of a program, service or position violates "the fundamental tenet" of the Abbott decisions, as expressed in Abbott V, supra, 153 N.J. at 511-23, 710 A.2d at 466-72 and In re Abbott v. Burke Implementing Regulations, supra, 348 N.J.Super. at 420-23, 792 A.2d at 435-37, that State aid "shall be based on the individualized or particularized needs of [each] district since the local need for programs, services and positions will vary from school to school and district to district."
However, we conclude that the DOE regulations that require a comparative *1084 analysis of the non-instructional expenditures in an Abbott district to those in other districts and a comparison of ratios of non-instructional/administrative staff to instructional staff in determining whether a particular program, service or position is ineffective or inefficient are not violative of the principles set forth in the Abbott decisions or arbitrary, capricious or unreasonable. We agree with the DOE's contention that such a comparative analysis "may reveal expenditure extremes in a district for which additional scrutiny by DOE is warranted." Consequently, an analysis of this comparative data may be sufficient for the DOE to carry its initial burden under paragraph five of the July 23rd order of "moving forward to establish the basis for any proposed reductions to the district's maintenance budget based on the effective and efficient standard," thus shifting to the Abbott district "the burden of demonstrating that any budgetary reductions are not justified under that standard." 177 N.J. at 599, 832 A.2d at 908. Therefore, we reject appellants' challenge to the facial validity of N.J.A.C. 6A:10-3.1(c)(1)(i) and (ii).
Nevertheless, our review of the DOE's application of these regulations in the individual Abbott budget appeals warrants additional discussion. Although the DOE's comparative analysis of an Abbott district's expenditures may be sufficient to shift the burden to the district to show that its higher than normal level of expenditures for a particular program, service or position is not ineffective or inefficient, a district must be afforded a reasonable opportunity to demonstrate that those expenditures are justified by its individual circumstances. A level of expenditures that may be sufficient to provide a program or service in one school district may be patently insufficient in another district due to differences in the nature of their student bodies, their facilities or other relevant factors. Consequently, a decision by the DOE to reduce the additional supplemental aid to be distributed to an Abbott district because of ineffectiveness or inefficiencies in its programs, services and positions should not be simply a mathematical exercise in which controlling weight is assigned to the comparative expenditure data mandated by N.J.A.C. 6A:10-3.1(c)(1)(i) and (ii). Moreover, to ensure that an Abbott district's explanations for an above normal level of expenditures for particular programs or services are properly evaluated, the DOE must assign responsibility for this evaluation to staff who have the professional training, experience and competence to determine the funding required to provide such programs and services in that particular district.
In addition to challenging the facial validity of N.J.A.C. 6A:10-3.1(c)(1)(i) and (ii), appellants argue that the DOE regulations governing ineffectiveness and inefficiency determinations are deficient because they contain "no standards or guidance on the showing necessary for [an Abbott] district to satisfy its burden of justifying an expenditure." Appellants contend that due to the lack of such standards, "the DOE regulations invite confusion, differing determinations and inconsistency in the application of the standards governing individual budget appeals." The DOE responds that by not adopting regulations that prescribe precisely how an Abbott district may demonstrate that above normal expenditures are justified by its individual circumstances, "the DOE gave flexibility to the districts to make demonstrations they believed necessary to establish the effectiveness/efficiency of the program."
Our review of the records in the individual Abbott budget appeals convinces us that the DOE's determinations of the effectiveness and efficiency of programs, services and positions would have greater consistency and fairness if the DOE adopted more comprehensive regulations *1085 describing how these determinations are to be made. For the 2003-04 school year, these determinations were made primarily by individual DOE budget analysts, each of whom was assigned to evaluate the budgets of not more than three Abbott districts. The records in the budget appeals reflect substantial differences in the budget analysts' approaches to ineffectiveness and inefficiency determinations. Consequently, the DOE's adoption of regulations containing more specific standards for these determinations would provide additional guidance to DOE staff and promote greater consistency in the DOE decisionmaking process. Such regulations would also provide the ALJs who hear Abbott budget appeals with standards against which to measure individual ineffectiveness and inefficiency determinations. We recognize that issues concerning ineffectiveness and inefficiency may arise in many contexts and that districts may offer a variety of justifications for above normal expenditures in a wide range of circumstances. For these reasons, it may not be feasible for the DOE to adopt regulations which contain a detailed blueprint for ineffectiveness and inefficiency determinations. However, the DOE should undertake to adopt regulations that provide as much guidance as is feasible to its staff and the Abbott districts concerning the manner in which these determinations will be made.
Nevertheless, we do not believe it would serve the interests of the Abbott districts or the students they are responsible for educating to require the DOE to adopt additional regulations at this late date and to make new ineffective and inefficient determinations based on those regulations. The ineffective and inefficient determinations affecting the Abbott districts 2003-04 budgets were made last August, and the budget appeals reviewing those determinations were concluded in October. It is now close to the end of January, and half the school year has been completed. If we were to require the adoption of new regulations and new ineffective and inefficiency determinations based on those regulations, the school year would be almost over by the time this process was completed. Therefore, we conclude that the shortcomings of the DOE regulations do not require the invalidation of the DOE's individual ineffective and inefficiency determinations. However, we have taken those shortcomings into consideration in our review of the individual Abbott budget appeals.

IV
[At the direction of the court, section IV has been deleted from the published version of this opinion.]
Accordingly, we conclude that N.J.A.C. 6A:10-3.1(e) and the definition of "maintenance budget" in N.J.A.C. 6A:10-1.2 are invalid as applied to the determination of the Abbott districts' 2003-04 preliminary maintenance budget figures. The DOE is directed to redetermine the Abbott districts' preliminary maintenance budget figures in conformity with paragraph four of the Supreme Court's July 23rd order and to issue revised figures to the Abbott districts within ten days of the filing of this opinion. We sustain the validity of N.J.A.C. 6A:10-3.1(c)(1)(i) and (ii) and N.J.A.C. 6A:10-3.1(f). Appellants have failed to show the need to determine the validity of any other DOE regulations in order to decide the pending budget appeals.