849 A.2d 1086

ASBURY PARK BOARD OF EDUCATION, KEANSBURG BOARD OF EDUCATION, PASSAIC BOARD OF EDUCATION, PHILLIPS-BURG BOARD OF EDUCATION, AND TRENTON BOARD OF EDUCATION, PETITIONERS–APPELLANTS, v. NEW JERSEY DEPARTMENT OF EDUCATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted February 19, 2004—Decided February 27, 2004.

Before Judges SKILLMAN, COBURN and WELLS.

*Richard E. Shapiro,* attorney for appellants.

*Peter C. Harvey,* Attorney General, attorney for respondent (*Nancy Kaplen,* Assistant Attorney General, of counsel; *Michelle Lyn Miller,* Senior Deputy Attorney General, on the brief).

*David G. Sciarra,* attorney for amicus curiae Education Law Center.

The opinion of the court was delivered by

SKILLMAN, P.J.A.D.

This appeal, which involves the validity of regulations adopted by the Commissioner of Education to govern the determination of additional supplemental State aid to be disbursed to Abbott school districts in 2003–04, is before us for the second time. Appellants' primary argument is that the definition of "maintenance budget"

in those regulations conflicts with the definition of that term in an order issued by the Supreme Court on July 23, 2003. *Abbott v. Burke,* 177 *N.J.* 596, 832 *A.*2d 906 (2003).

When this appeal was first brought before us, the only context in which the Department of Education (DOE) had applied the regulation's definition of "maintenance budget" was in the determination of the Abbott districts' preliminary maintenance budget figures for the 2003–04 school years. Moreover, twenty appeals from the Commissioner's final decisions regarding those preliminary budget figures were then (and still are) pending before this panel. Most significantly, we concluded that paragraph four of the Court's July 23rd order clearly prescribed the methodology by which the Abbott districts' preliminary maintenance budget figures were to be determined, and that the regulation's definition of "maintenance budget," and the DOE's methodology for determining preliminary maintenance budget figures, could not be reconciled with that paragraph of the order.

Accordingly, by an opinion issued on January 26, 2004, "we conclude[d] that *N.J.A.C.* 6A:10–3.1(e) and the definition of 'maintenance budget' in *N.J.A.C.* 6A:10–1.2 are invalid as applied to the determination of the Abbott districts' preliminary maintenance budget figures ... [and] direct[ed] the DOE to redetermine the Abbott districts' preliminary maintenance budget figures in conformity with paragraph four of the July 23rd order and to issue revised figures to the Abbott districts within ten days of the filing of this opinion." *Asbury Park Bd. of Educ. v. N.J. Dept. of Educ.,* 369 *N.J.Super.* 481, 493, 849 A.2d 1074, 1081–82 (App.Div.2004). In addition, we sustained the validity of *N.J.A.C.* 6A:10–3.1(c)(1)(i) and (ii) and *N.J.A.C.* 6A:10–3.1(f), but concluded that there was no need to determine the validity of any other DOE regulation in order to decide the pending budget appeals. *Id.* at 499–500, 849 A.2d at 1085.

Ten days following issuance of this opinion, on February 5, 2004, the DOE issued revised preliminary maintenance budget figures. On the same day, the DOE also issued final maintenance budget

figures for the 2003–04 school year based on the DOE's review of each district's Comprehensive Annual Financial Report (CAFR).

On February 10, 2004, appellants filed an emergent motion for relief in aid of litigants' rights and/or clarification of our January 26, 2004 opinion. In their brief in support of the motion, appellants argued that both the DOE's revised preliminary maintenance budget figures and its final maintenance budget figures conflicted with the Supreme Court's July 23rd order and this court's January 26th opinion.

In its answering brief, the DOE argued that both its revised preliminary and final maintenance figures conformed in all respects with the Court's order and this court's opinion. In addition, the DOE argued that its filing of a notice of petition for certification with the Supreme Court had divested this court of jurisdiction to consider the part of appellants' motion which sought clarification of this court's opinion.

On February 17, 2004, this court issued an order which denied appellants' motion for relief in aid of litigants' rights on the merits. This order also denied appellants' motion for clarification on the ground that the DOE's filing of a notice of petition for certification had divested this court of jurisdiction to modify or supplement the terms of the judgment embodied in its January 26, 2004 opinion.

On February 19, 2004, the Supreme Court temporarily remanded this appeal to us "to consider [the] motion for clarification on the merits on an expedited basis." That same date, we entered an order granting appellants' motion for clarification. Our order indicated that a supplemental opinion would follow and afforded the parties an opportunity to file supplemental briefs with respect to the issues presented by appellants' motion, which were submitted earlier this week.

Appellants' motion for relief in aid of litigants' rights and/or clarification presented two arguments. First, appellants argued that the DOE's revised preliminary maintenance budget figures violated the July 23rd order and this court's opinion because they

did not include adjustments for documented increases in non-discretionary expenditures. Second, appellants argued that the DOE's final maintenance budget figures violated the July 23rd order because they were based on the Abbott districts' actual expenditures during the 2002–03 school year, rather than their 2002–03 approved budgets. It is unclear whether appellants' first argument was presented solely in support of their motion for relief in aid of litigants' rights, which this court denied in its February 17, 2004 order, or whether appellants also presented that argument in connection with their motion for clarification. In any event, we are satisfied that any issue concerning the omission of adjustments for documented increases in non-discretionary expenditures from the revised preliminary maintenance figures is now moot, because the final maintenance budget figures, which include those adjustments, supersede the preliminary figures with respect to future payments of supplemental *Abbott v. Burke* State aid in the 2003–04 school year. Consequently, the only issue we need to decide is the validity of the DOE's definition of "maintenance budget" as applied to the determination of the final maintenance budget figures.

Our original opinion only addressed the validity of the DOE's definition of "maintenance budget" as applied to the determination of preliminary maintenance budget figures. *Asbury Park, supra,* at 491–94, 849 A.2d at 1080–82. We concluded that paragraph four of the Court's July 23rd order resolved this issue. This paragraph contains the following directive:

> Within 30 days of the issuance of this Order, *the DOE shall provide in a Notice to each district preliminary maintenance budget figures for the 2003–2004 school year consisting of the 2002–2003 approved budget and an estimate of the supplemental funding that will be needed to support that currently approved budget.* If the DOE deletes an expenditure from a district's 2002–2003 budget related to the district's non-instructional programs and based on the effective and efficient standard, the DOE must include in the written notice to the district the expenditure deleted along with a specific statement explaining why the program or part thereof is no longer effective and efficient.
>
> [177 *N.J.* at 598–99, 832 *A.*2d at 908 (emphasis added).]

Thus, paragraph four clearly directs the DOE to determine preliminary maintenance budget figures on the basis of the Abbott

districts' "2002–03 approved budget[s]" plus an estimate of the supplemental funding needed to support "*that* currently approved budget" (emphasis added), less deductions for any non-instructional programs or parts of programs that the DOE finds to be ineffective and inefficient. *Asbury Park, supra,* 369 *N.J.Super.* at 492, 849 *A.*2d at 1081. Our original opinion concluded that the DOE's definition of "maintenance budget," which required supplemental State aid only for those programs, services and positions that were not only "approved" in the Abbott districts' 2002–03 budgets but also actually "provided" during the 2002–03 school year, could not be reconciled with the Court's unequivocal directive to the DOE to determine preliminary maintenance budget figures on the basis of the Abbott districts' "2002–03 approved budget[s]." *Ibid.* We found confirmation for this interpretation of paragraph four in the tape of the July 10th oral argument before the Supreme Court. See *id.* at 492–93, 849 *A.*2d at 1081.

Because our original opinion rested solely on an interpretation of paragraph four, and paragraph four only deals with the methodology for determining the Abbott districts' "preliminary maintenance figures for the 2003–2004 school year," 177 *N.J.* at 598–99, 832 *A.*2d at 908, our discussion of the validity of the DOE's definition of "maintenance budget" ended by noting: "We express no view concerning the validity of the DOE's definition of 'maintenance budget' as it may be applied in any context other than the determination of preliminary maintenance budget figures." *Asbury Park, supra,* 369 *N.J.Super.* at 493–94, 849 A.2d at 1082.

We were able to determine the validity of the DOE's definition of "maintenance budget" as applied to the determination of the Abbott districts' preliminary maintenance budget figures solely on the basis of paragraph four, without undertaking to interpret paragraph two. However, because paragraph four deals only with the methodology for determining preliminary maintenance budget figures, the issue presented by appellants' motion for clarification—the validity of the DOE's definition of "maintenance budget"

as applied to the determination of final maintenance budget figures—requires us to interpret paragraph two.

Paragraph two states:

The Statewide aggregate amount of Additional Abbott Burke State Aid shall be presumptively calculated as the total amount of Additional Abbott Burke State Aid approved for the *Abbott* districts for Fiscal Year 2002–2003, subject to adjustment as required for a maintenance budget. A maintenance budget shall mean that a district will be funded at a level such that the district can implement current approved programs, services, and positions and therefore includes documented increases in non-discretionary expenditures. Examples of non-discretionary expenditures are increases in contracted salaries, health benefits, and special education tuition. Maintenance does not include the restoration of programs, positions, or services that were reduced in 2002–2003, or new programs, positions, or services, except in respect of Paragraph 2c. of the Court's Order of June 24, 2003 (pertaining to those elementary schools without a whole school reform developer in place in 2002–2003 and permitting whole school reform contracts in certain circumstances), irrespective of the timing for the promulgation of regulations governing that provision.

[177 *N.J.* at 598, 832 *A.*2d at 907]

Appellants argue that "the Court's Order contemplated that the baseline maintenance budget for the 2003–04 school year would consist of approved 2002–03 programs, services and positions." On the other hand, the DOE argues that paragraph two reflects "the Court's decision to adopt the DOE proposal of 'program maintenance' rather than 'funding maintenance.' "

Initially, we note that the only place in the July 23rd order where the Court used the term "2002–2003 approved budget" was paragraph four. Although the Court also used the modifier "approved" in the definition of "maintenance budget" in paragraph two, the word "approved" in paragraph two modifies "current . . . programs, services and positions" rather than the "2002–2003 . . . budget." The key sentence in paragraph two states in pertinent part that "[a] maintenance budget shall mean that a district will be funded at a level such that the district can implement current approved programs, services, and positions." The Court's mandate that an Abbott district "be funded at a level such that the district can implement current approved programs, services and positions" does not require a program, service or position to be funded at the same level as in the prior year if experience has

shown that it can be provided at a lower level of funding than was provided in the prior year's budget. Paragraph two also states that "[m]aintenance does not include the restoration of programs, positions, or services that were reduced in 2002–03." The clear import of this statement is that a 2003–04 maintenance budget does not need to include full funding for programs, services or positions that were part of an Abbott district's approved 2002–03 budget if those programs, services or positions were reduced or eliminated during the course of the 2002–03 school year.

Consequently, the definition of "maintenance budget" in paragraph two does not require the DOE to use the 2002–03 approved budget as a baseline for determining the 2003–04 budget, but instead allows the DOE to use any methodology that ensures that "[an Abbott] district will be funded at a level such that the district can implement current approved programs, services, and positions." The Court's further stipulation that "[m]aintenance does not include the restoration of programs, positions, or services that were reduced in 2002–2003," indicates that what the Court intended by "current" approved programs, services and positions was not simply all programs, services and positions that were included in the district's approved 2002–03 budget, but rather only those programs, services and positions that were "current," i.e., still in existence, when the 2003–04 budget was formulated.

This interpretation of paragraph two is also supported by paragraph one, which states that "K–12 programs provided for in the 2002–2003 school year will be continued." For a program to be "continued" in 2003–04, it must have been not only authorized in the budget for 2002–03 but actually have been created and still in existence at the end of that year.

Appellants argue that however paragraphs one and two might be construed in isolation, when construed in light of paragraph four, they require the use of the Abbott districts' 2002–03 approved budgets as the baseline for determining both their preliminary and final maintenance budget figures because there is no logical distinction between the methodologies for determining

preliminary and final budget figures. However, this argument ignores the context in which the Court adopted the methodology prescribed in paragraph four for determining preliminary maintenance budget figures. When the July 23rd order was issued, the beginning of school was only a little more than a month away. Consequently, the DOE had to use a methodology for determining supplemental *Abbott v. Burke* State aid that could be quickly calculated based on available budgetary data. The Abbott districts' 2002–03 approved budgets provided readily available figures that could be determined without any investigation into what programs, services and positions the Abbott districts actually had provided in the 2002–03 school year or any audit of their actual expenditures during that year.

Moreover, even though paragraph four of the July 23rd order directed the DOE to determine the Abbott districts' preliminary maintenance budget figures on the basis of their 2002–03 approved budgets, paragraph two clearly informed the districts that they could not use any extra money they might receive under this methodology for "the restoration of programs, positions, or services that were reduced in 2002–2003, or new programs, positions, or services." Thus, properly construed, the July 23rd order itself indicates that a program, service or position had to be not only "approved" in the 2002–03 budget but also actually "provided" in the 2002–03 school year in order to be considered part of a true maintenance budget. Therefore, there is nothing inherently inconsistent or illogical in using a methodology based on 2002–03 budget figures to determine an Abbott district's preliminary 2003–04 budget figures, but subsequently utilizing data regarding the actual cost of school programs and services in 2002–03 to provide a more accurate projection of the likely cost of those programs and services in 2003–04. We also note that if such a projection turns out to be too low due to unforeseen circumstances, such as a significant increase in energy costs, a district may seek additional supplemental funding from the DOE under *N.J.A.C.* 6A:10–3.1(g).

The dissent's view that the DOE's use of actual 2002–03 expenditures as the baseline for determining the Abbott districts' 2003–04 final maintenance budget figures will prevent timely disposition of their budget appeals is incorrect. The Commissioner's determinations in the districts' appeals from the preliminary budget figures relating to inefficiencies and ineffectiveness of programs, services and positions and documented increases in non-discretionary expenditures have been carried forward in the final budget figures.[1] Consequently, our decisions in the budget appeals from those determinations also will apply to the final budget figures. Moreover, because the DOE erroneously used actual expenditures rather than approved budget figures in determining the baseline preliminary budget figures, our review of the Commissioner's determinations relating to the components of those figures, such as salaries, may result in modifications of this part of the final budget figures. It is of course possible for the DOE's determination of a final budget figure to generate new issues that would require administrative review, such as a dispute concerning the amount of excess surplus at the close of the 2002–03 school year or the allocation of expense items between accounts payable and encumbrances. However, this would be equally true, regardless of whether the DOE used the Abbott districts' 2002–03 approved budgets or their actual expenditures as the baseline for the determination of the final maintenance budget figures.

Accordingly, we conclude that the definition of "maintenance budget" in *N.J.A.C.* 6A:10–1.2, as meaning "a budget funded at a level such that the district can implement 2002–2003 approved and provided programs, services, and positions," and the part of *N.J.A.C.* 6A:10–3.1(c), which provides that a maintenance budget for 2003–04 shall "contain[ ] only those programs, positions, and

---

[1] As appellants note in their supplemental briefs, there are differences between some of the preliminary and final budget figures, which are apparently attributable to the CAFR budget review process. We assume that the DOE will address those differences and provide appellants and the court with appropriate explanations as soon as possible.

services approved and provided in 2002–2003[,]" are facially valid as applied to the determination of final maintenance budget figures.

Although we uphold the facial validity of these regulations, we are aware from our review of the records in the twenty pending Abbott budget appeals that the DOE has construed its regulations to authorize a budget methodology under which the baseline for determining an Abbott district's 2003–04 budget is solely the actual expenditures in 2002–03 for programs, services and positions. However, this methodology is not specifically set forth on the face of the regulations challenged in this appeal. Furthermore, we do not perceive anything inherently unreasonable in the use of 2002–03 actual expenditures as the baseline for determining 2003–04 final maintenance budget figures. To the contrary, we concur with the DOE's view that the amount of money an Abbott district actually had to expend to provide a particular program or service last year provides a more reliable starting point for determining what it will cost to provide that same program or service this year than the amount that was budgeted before the beginning of the year.

Our review of the records in the individual budget appeals reveals problems in the DOE's application of this methodology in those cases where an Abbott district has made a persuasive showing that a particular program or service probably will cost more to provide in 2003–04 than it did in 2002–03. However, those problems do not affect the facial validity of the DOE's definition of "maintenance budget," but instead can be properly addressed within the framework of the pending *Abbott* budget appeals based on the records in the hearings before the Office of Administrative Law.

Accordingly, we conclude that the definition of "maintenance budget" in *N.J.A.C.* 6A:10–1.2 and the part of *N.J.A.C.* 6A:10–3.1(c) challenged by appellants are facially valid as applied to the determination of the Abbott districts' 2003–04 final maintenance budget figures.

COBURN, J.A.D., dissenting.

Speaking for the Court in *Abbott v. Burke,* 170 *N.J.* 537, 790 *A.*2d 842 (2002), Chief Justice Poritz observed that "[t]imely disposition of Abbott cases is critical for children living in the Abbott districts." *Id.* at 543, 790 *A.*2d at 846. She added that "[d]ecision-making in respect of programs for the next school year must be completed in time for implementation *in* the next school year if the process is to be meaningful." *Ibid.* She concluded by characterizing the Department of Education's record on "timely disposition" of Abbott budgeting decisions as "dismal." *Ibid.* The letters issued by the Department of Education ("DOE") on February 5, 2004, which are at issue here, are not merely a continuation of that dismal record; they reveal continued, if not willful, resistance to the Court's efforts to insure for every child in the Abbott districts the thorough and efficient education guaranteed by our State Constitution.

The overarching purpose of the Supreme Court's order of July 23, 2003, *Abbott v. Burke,* 177 *N.J.* 596, 832 *A.*2d 906 (2003) ("*Abbott XI*"), was to obtain fair and timely administrative dispositions that would permit the districts to plan and execute their 2003–2004 budgets rationally. Since I believe that the majority's opinion is inconsistent with that purpose and misinterprets the Supreme Court's order to the prejudice of the school districts and the children they serve, I respectfully dissent.

On January 26, 2004, we filed an opinion in this case directing the DOE "to redetermine the Abbott districts' preliminary maintenance budget figures in conformity with paragraph four of the Supreme Court's July 23rd order and to issue revised figures to the Abbott districts within ten days of the filing of this opinion." *Asbury Park Board of Education v. New Jersey Department of Education,* 369 *N.J.Super.* 481, 493, 849 *A.*2d 1074, 1081 (App.Div. 2004).

On February 5, 2004, the DOE sent two letters to each district. Though the figures differ for each district, the essence of the letters was the same for all districts. The DOE's position was that the first letter satisfied our ruling, but that the figures in that

letter were superseded by the figures in the second letter, which contained calculations based on the district's 2002–2003 spending as certified pursuant to the Comprehensive Annual Financial Report ("CAFR") for that fiscal year, prepared in accordance with *N.J.S.A.* 18A:23–1 to –11, which requires the districts to complete their audits "not later than 4 months after the end of the school fiscal year." *N.J.S.A.* 18A:23–1.

The DOE's first letter relied on an interpretation of paragraph four of the Court's July 23rd order which I reject. The key phrase in paragraph four is "estimate of the supplemental funding that will be needed to support that currently approved budget." The DOE interpreted that phrase to refer to State discretionary Abbott aid. It then determined the number for that aid by subtracting the 2003–2004 revenues of the district from the district's 2002–2003 approved budget. However, it did so without adding money to the 2002–2003 budget for non-discretionary expenditures. It adopted that course because, as its letter said, "The only adjustment to the 2002–2003 approved budget referenced in paragraph four is a reduction for programs found to be ineffective or inefficient, thus no adjustments for non-discretionary costs are included."

The DOE's new tactic is inconsistent with its original interpretation of the Supreme Court's order and contrary to a sensible reading of that order.

In the August notices, the DOE included money for non-discretionary increases, and in its brief on the initial appeal, the DOE argued that it "permitted districts to appeal any portion of the DOE maintenance budget decision and that districts did so." It added in a footnote to that statement that "[t]his included the ability to appeal the items identified by the DOE for non-discretionary increases and the percentage of the increase."

The first of the two February 5th DOE letters purported to be in the form required by paragraph four, but if that were so the districts would have had no knowledge in August 2003 of the increases for non-discretionary items. Without that knowledge,

they could not have prepared their budgets, and they obviously would have been unable to litigate the issues arising from the DOE's allowances for non-discretionary items in the OAL in the time frame ordered by the Supreme Court.

If the DOE's contentions—that it was entitled to recalculate aid based on actual 2002–2003 expenditures as established by the CAFR, and that it also would have been proper to withhold the figures for non-discretionary expenditures until the 2002–2003 CAFR—are correct, then the districts would be permitted to bring actions now in the OAL challenging the calculations for non-discretionary spending. But that course would be inconsistent with the DOE's initial approach of allowing for those expenditures in the August 2003 letters. It would also be inconsistent with the Supreme Court's order, which clearly contemplated only one appeal by each district in the OAL following service of the notices required by paragraph four of its order.

The DOE's approach in the first letter of subtracting 2003–2004 revenues from the 2002–2003 approved budget makes no sense. The difference cannot be rationally categorized as an "Estimate of Supplemental Funding" because the Supreme Court clearly ruled in paragraph two of its July 23rd order that the supplemental funding was to be determined, in part, by adding to the 2002–2003 budget the money necessary for non-discretionary expenditures.

Paragraph two of the Court's July 23rd order provides no support for what the DOE has done here. When the Court referred to implementation of "*current approved* programs, services, and positions" for the maintenance budgets it was referring to items "approved" in the 2002–2003 budget. *Abbott XI*, 177 *N.J.* at 598, 832 *A.*2d at 907 (emphasis added). These are matters that are current, not in the sense that they were in existence at the moment the order was entered, but current in the sense that they were provided for in the 2002–2003 budget. This interpretation is buttressed by the additional statement in paragraph two of the July 23rd order that "[m]aintenance does not include the restoration of programs, positions, or services that were *reduced* in 2002–

2003, or new programs, positions, or services. . . ." *Ibid.* (emphasis added). I believe that when the Court used the phrase "reduced in 2002–2003," it was referring, not to coincidences occurring during the year, but to the budget as adopted for 2002–2003 and as approved by the DOE. Paragraph one of the Court's order provides further support. The Court said this: "During 2003–2004, K–12 programs *provided for* in the 2002–2003 school year will be continued. . . ." *Ibid.* (emphasis added). The phrase "provided for" refers, not to district expenditures, but to their budgets.

The August 27, 2003, notices to the districts were intended by the Supreme Court to establish for the districts what their budgets would be for the year, and these notices were to be the basis for any litigation between the DOE and the districts. The 2002–2003 CAFR and the Appropriations Act have no relationship to that process. CAFR, apart from its role of providing the DOE with a mechanism for oversight of district budgets, provides an accurate method of confirming as to each district the amount of excess surplus arising from a previous year's budget, in this case the 2002–2003 budget. The Appropriations Act makes that excess surplus available to the DOE as follows:

> In making any adjustment to the discretionary award, the commissioner shall consider all of the district's available resources and any appropriate reallocations, including, but not limited to, a reallocation of the district's undesignated general fund balances in excess of two percent.
>
> [*L.* 2003, *c.* 122.]

That section of the Appropriations Act also permits adjustments based on "available resources" that appear during the year and reallocations that are justified when, for whatever reason, the expenditures for a line item in the budget turn out to be less than expected. But all of these adjustments are "to the discretionary award," not to the budget. They can be made during the year because Abbott discretionary aid is paid from time to time throughout the year.

Consequently, the DOE, acting pursuant to the authority provided by the Appropriations Act, can use reallocation and the excess surplus of a district, as identified by the CAFR process, to

assist in the funding of the district's current budget, which in this case is the budget for 2003–2004, thereby, and to that extent, reducing State aid without harm to the district. Nothing in the CAFR, the Appropriations Act, or indeed in the DOE regulations, justifies recalculation of the approved 2003–2004 budget expenditures based on the 2002–2003 expenditures over halfway through the school term and after the OAL appeals process established by the Supreme Court has been completed.

As noted above, the districts' CAFR reports must be filed with the DOE no later than four months after the end of the school fiscal year. Thus, the 2002–2003 CAFR reports should have been filed before we rendered our first opinion; in which case, the DOE, if its present position is correct, could have issued the second of the February 5, 2004, letters before we decided the case, thereby rendering that opinion moot on the maintenance budget issue. The DOE's failure to follow that course then is inconsistent with its adoption of that course now. Had I supposed for a moment that the DOE would read our opinion as somehow permitting it to follow the course it has now chosen, I would not have joined that opinion.

Despite this ongoing litigation, the proper vantage point for analysis of the Supreme Court's July 23rd order is the beginning of the 2003–2004 fiscal year. Although the Supreme Court contemplated continued litigation by the districts, its intent was to have the DOE approve the districts' budgets by the end of August, and it intended that the separate paragraphs of its order be read in relationship to each other to obtain that goal. It did not contemplate, so far as I can tell, that the distinction it drew between a preliminary maintenance budget and a final maintenance budget would be used in the manner now selected by the DOE. Rather, it directed the DOE to accept for 2003–2004 the 2002–2003 budgets, as increased for non-discretionary items, and as reduced for such inefficiencies as it could identify.

Therefore, I would direct the DOE to recalculate the districts' final maintenance budgets for 2003–2004 in accordance with the

thrust of our prior opinion and the Supreme Court's order, by adding to the 2002–2003 budget of each district the non-discretionary expenditures as originally calculated by the DOE, subject to further adjustment based on our resolution of the individual district appeals directed to inefficiency deductions and adjustments for non-discretionary spending.